UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JONAH SHYKEEM COLEMAN | CIVIL ACTION NO. 6:20-cv-01469 |
| VERSUS | JUDGE SUMMERHAYS |
| CITY OF OPELOUSAS, ET AL. | MAGISTRATE JUDGE WHITEHURST |

## REPORT AND RECOMMENDATION

Currently pending are the motion to enforce the settlement or, alternatively, to reopen the case and set it for trial (Rec. Doc. 8), which was jointly filed by defendants City of Opelousas, Chief Martin McLendon, OGH Medical Services, Inc., Heath Dorman, Hub Enterprises, Inc. and Joseph Livings; and the motion to reopen the case and reinstate all claims (Rec. Doc. 18), which was filed by the plaintiff, Jonah Coleman. Both motions are opposed. Although a dismissal order was issued in this case following a settlement conference, the dismissal order states that the court retained jurisdiction for enforcement of the settlement agreement. (Rec. Doc. 7.) This case is assigned to Judge Summerhays and Magistrate Judge Whitehurst, but the undersigned Magistrate Judge presided over a settlement conference held on March 15, 2021. Therefore, this Court is tasked with deciding whether the settlement agreement should be enforced.

Because this Court's decision on the pending motions is dispositive of the plaintiff's claims, it is presented as a report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.

Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the defendants' motion to enforce the settlement (Rec. Doc. 8) should be GRANTED, the defendants' alternate motion to reopen the case and set it for trial (Rec. Doc. 8) should be DENIED, and the plaintiff's motion to reopen the case and reinstate his claims (Rec. Doc. 18) should be DENIED.

## **Background**

The plaintiff, Jonah Shykeem Coleman, Jr., filed a petition for damages in the 27th Judicial District Court, St. Landry Parish, Louisiana, which the defendants removed to this forum. Mr. Coleman claimed that his mother called 911 at about 4:00 a.m. on October 30, 2019 because he needed emergency medical attention. When law enforcement officers arrived, they were told that Mr. Coleman had ingested ammonia. He appeared to be disoriented and anxious but voluntarily got into the ambulance and laid down on the gurney but then had a panic attack. He was taken to Opelousas General Hospital in the ambulance. A videotape from a surveillance camera in the treatment room in the hospital's emergency department showed police officer Tyron Andrepont placing Mr. Coleman in a chokehold,

striking his face, pushing him down on the bed, and pushing down on his neck. Mr. Coleman alleged that Officer Andrepont used excessive force in restraining him. He further alleged that nurse Heath Dorman and hospital security guard Joseph Livings used excessive force in assisting Officer Andrepont. Mr. Coleman alleged that there was no justifiable reason for the excessive force applied and that the excessive force resulted in him being injured.

The plaintiff sued the hospital; nurse Dorman; the city of Opelousas; Opelousas police chief Martin McLendon; Opelousas police office Andrepont; the hospital's security provider, Hub Enterprises, Inc.; and Hub's employee, security guard Livings. The plaintiff alleged that the hospital and Hub were negligent; that Mr. Andrepont and Mr. Livings violated his Fourth Amendment rights by using excessive force; that the City failed to properly train, supervise, and discipline its police officers; and that the defendants abused their power.

On March 15, 2021, a settlement conference was held before the undersigned Magistrate Judge by video conference using Zoom. At the conclusion of the conference, the parties represented that they had resolved their differences and the terms of the agreement were recited (Rec. Doc. 14), as represented in the minutes of the settlement conference (Rec. Doc. 6). A dismissal order was issued. (Rec. Doc. 7). The plaintiff now contends, however, that he did not agree to the terms of the settlement, while the defendants seek to enforce the agreement they claim was

reached at the conference. That issue must be resolved before a decision can be made concerning whether the case should be reopened.

The plaintiff did not file a brief in opposition to the defendants' motion to enforce the settlement agreement; however, in response to this Court's order (Rec. Doc. 20), he advised that he wished to have the arguments set forth in support of his motion to reopen the case interpreted as an opposition to the motion to enforce the settlement agreement. (See Court Exhibit 1 – Rec. Doc. 27). This Court will do so.

This Court afforded the plaintiff's former counsel, L. Clayton Burgess, the opportunity to brief the relevant issues, and Mr. Burgess did so. (Rec. Doc. 22).

This Court held an evidentiary hearing on July 22, 2021 during which the plaintiff, Mr. Coleman, and his former counsel, Mr. Burgess, both testified.

## Law and Analysis

### A. Jurisdiction Over the Pending Motions

This case was dismissed following the settlement conference. (Rec. Doc. 7). When a case has been dismissed, a district court does not retain ancillary jurisdiction to enforce a settlement agreement unless the dismissal order expressly reserves jurisdiction.[1] In this case, the dismissal order required the parties to file either a motion for entry of judgment on all claims, a motion to reopen the matter and

---

[1] *Harvey v. Caesars Entertainment Operating Company, Inc.*, 790 Fed. App'x 582, 595 (5th Cir. 2019) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-82 (1994)).

4

reinstate all claims for failure to finalize the settlement agreement, or a motion to enforce the settlement agreement. (Rec. Doc. 7). The order also expressly stated that the "Court shall retain jurisdiction over this matter until such time as compliance with this Order has been fulfilled." (Rec. Doc. 7). Accordingly, this Court has the authority to resolve the dispute concerning the alleged settlement agreement.

**B.     The Law Applicable to the Motion to Enforce the Settlement**

A court exercising diversity jurisdiction applies the law of the state in which the settlement agreement was negotiated and is to be performed,[2] while a court exercising federal-question jurisdiction applies federal law to the enforcement of settlement agreements.[3] Mr. Coleman's lawsuit was originally filed in state court, but it asserted claims for the violation of rights guaranteed by the United States Constitution as well as state-law claims. The suit was removed to federal court on the basis of federal-question jurisdiction.[4] Therefore, in this case, the issue of the

---

[2]     *Matter of Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995); *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987).

[3]     *Bowers v. Abundant Home Health, L.L.C.*, 803 Fed. App'x 765, 767 n. 4 (5th Cir. 2020); *Fisk Electric Company v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018); *Del Bosque v. AT & T Advertising, L.P.*, 441 Fed. App'x 258, 261 n. 4 (5th Cir. 2011); *Tyler v. Cedar Hill Independent Sch. Dist.*, 426 Fed. App'x 306, 308 (5th Cir. 2011); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984).

[4]     Rec. Doc. 1 at 2 ("Appearers desire and are entitled to remove the above suit. . . to federal court. . . pursuant to the provisions of 28 U.S.C. § 1331. . . .").

5

enforcement of the parties' settlement agreement is governed by federal law, not Louisiana state law.

The party opposing the enforcement of a settlement agreement has the burden of showing that the contract is invalid[5] and must be allowed an evidentiary hearing.[6] Mr. Coleman must bear that burden in this case, and an evidentiary hearing was held in this case. The central issue to be decided following such a hearing is "whether there was any disputed issue of material fact as to the validity of the settlement agreement."[7]

Under federal law, a settlement agreement is a contract.[8] The federal common law of contracts "uses the core principles of the common law of contracts that are in force in most states."[9] For a valid contract to exist under federal law, there must be an offer, acceptance, consideration, essential terms, and a meeting of the minds among the parties.[10] "An offer is judged by the parties' overt acts and words, not by

---

[5] *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d at 392.

[6] *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (citing *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d at 390).

[7] *In re Deepwater Horizon*, 786 F.3d at 354.

[8] *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992).

[9] *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (internal quotation marks and citations omitted).

[10] *Johnson v. BP Exploration & Prod.*, 786 F.3d 344, 355-59 (5th Cir. 2015).

the subjective or secret intent of the offeror."[11] Likewise, "acceptance of an agreement is generally determined by "outward, objective manifestations of assent," and therefore "an actual intention to accept is unimportant except in those situations when the acts or words of the offeree are ambiguous."[12]

"Federal law does not require settlement agreements to be reduced to writing."[13] However, agreements to settle federal claims must be entered into voluntarily and knowingly.[14] "Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement."[15] "Absent a factual basis rendering it invalid, an oral agreement to settle a [federal] claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute."[16] To determine whether

---

[11] *In re Deepwater Horizon*, 786 F.3d at 355.

[12] *Bowers v. Abundant Home Health, LLC*, No. 3:16-cv-1314-C, 2021 WL 706783, at *6 (N.D. Tex. Jan. 25, 2021), report and recommendation adopted, 2021 WL 693652 (N.D. Tex. Feb. 23, 2021) (citing 2 Williston on Contracts, § 6:3: Objective manifestations generally control (4th ed.)).

[13] *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).

[14] See, e.g., *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d at 1209. See, also, *Jackson v. Widnall*, 99 F.3d 710, 714 (5th Cir. 1996); *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994).

[15] *Bell v. Schexnayder*, 36 F.3d at 449 (quoting *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir. 1982)).

[16] *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d at 1209.

a settlement agreement was knowingly and voluntarily executed, the Fifth Circuit has adopted a "totality of the circumstances" approach.[17]

A court may enforce a settlement agreement when one party initially agreed to settle but later refused to execute a formal agreement reciting the terms of the settlement.[18] Consistently, a settlement agreement is valid and enforceable even if it contemplates that the parties will sign release documents at a later date.[19] The settlement agreement is not nullified "if one party ultimately fails to execute or sign the final formal release documents."[20] However, the agreement must contain all of the elements of a binding contract, including that it encompass all of the "material or essential terms."[21] Thus, an initial agreement to settle a matter may be held valid and enforceable even if does not contain many of the details that will be part of the final written agreement.[22] Generally, there is a meeting of the minds among the parties on "all of the material terms of settlement where the parties have agreed upon

---

[17] *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (citing *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)).

[18] *Weaver v. World Fin. Corp. of Texas*, No. CIV.A. 3:09-CV-1124-G, 2010 WL 1904561, at *1 (N.D. Tex. May 12, 2010) (citing *Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137, 137 (5th Cir. 1998) (per curiam)).

[19] *In re Deepwater Horizon*, 786 F.3d at 355.

[20] *In re Deepwater Horizon*, 786 F.3d at 355.

[21] *In re Deepwater Horizon*, 786 F.3d at 357 ("A putative contract is unenforceable if it lacks material or essential terms.").

[22] See *In re Deepwater Horizon*, 786 F.3d at 358-59.

8

the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims."[23]

To establish that no settlement agreement was reached, a party must demonstrate that the settlement was "tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."[24] When the parties "negotiated at arms-length and there was no taint of fraud, deception, coercion[,] or overreaching, the settlement [is] binding, despite a claim of mutual mistake."[25] The party seeking to avoid enforcement of the settlement agreement has the burden to demonstrate that it "was invalid because of fraud, duress, material mistake, or some other defense."[26] Absent these conditions, a party's alleged ignorance of specific limitations may constitute, at most, a unilateral mistake, which is insufficient to void the agreement.[27]

---

[23] *In re Deepwater Horizon*, 786 F.3d at 357 n.26.

[24] *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d at 392.

[25] *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d at 392 (citing *Strange v. Gulf & South American Steamship Co.*, 495 F.2d 1235, 1237 (5th Cir. 1974) (internal quotation marks omitted)).

[26] *Smith v. Amedisys Inc.*, 298 F.3d at 441.

[27] See *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d at 392.

The compromise of disputed claims is favored under federal law.[28] Consistent with the principles listed above, district courts have the "inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties."[29] In summary, then, absent a factual basis rendering the settlement agreement invalid, an oral agreement to settle a claim arising under federal law – such as the claim asserted by Mr. Coleman in this lawsuit – is enforceable against a party who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute.

In applying the foregoing principles, this Court will first determine whether an agreement was formed as to all material terms and then determine whether Mr. Coleman has any valid defenses to the enforcement of the agreement.

### C. The Settlement Agreement Should be Enforced

This Court began the March 15, 2021 settlement conference by conducting a video conference with all of the parties collectively, then conducted separate video conferences with the plaintiff, his family, and his counsel and with each of the three defendants' representatives and their counsel. The conference lasted approximately three and a half hours. (Rec. Doc. 6). During the conference, Mr. Coleman, his

---

[28] *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d at 391; *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967).

[29] *Bell v. Schexnayder*, 36 F.3d at 449.

mother, and his father, were physically located at the office of Mr. Coleman's counsel, Mr. Burgess. Mr. Coleman's original counsel, Daryl K. Washington, who has never enrolled on behalf of Mr. Coleman in this lawsuit, was not physically in the same room with Mr. Coleman, his family, and Mr. Burgess, but he was present on the video conference. Additionally, Mr. Coleman was able to – and did during the settlement conference – contact Mr. Washington by telephone. Both Mr. Burgess and Mr. Washington actively participated in the settlement negotiations on behalf of Mr. Coleman. Mr. Coleman did not argue in his briefing or assert at the hearing that his attorneys settled his claim without being authorized to do so. During the negotiations, Mr. Coleman was also able to confer with his parents. Therefore, it is undisputed that Mr. Coleman had the advice and assistance of his parents and his legal counsel throughout the settlement conference.

At the conclusion of the parties' negotiations, the defendants jointly offered to pay Mr. Coleman $200,000 in settlement of his claims in exchange for his release of all claims asserted in the lawsuit. There is no dispute that Mr. Coleman accepted this offer. Both Mr. Coleman and Mr. Burgess confirmed in their hearing testimony that Mr. Coleman accepted the defendants' settlement offer. Mr. Coleman stated that when he agreed to accept the offer, his parents were in the room with him. He also confirmed that he heard the discussion of the terms of the settlement recited by this Court on the record at the conclusion of the settlement conference as

documented in the transcript filed in the suit record. (Rec. Doc. 14). Mr. Coleman also confirmed in his hearing testimony that he did not voice any opposition to the terms of the settlement at that time.

Mr. Coleman did not allege that his counsel acted without his authorization in agreeing to accept the defendants' offer, and Mr. Burgess testified that he and Mr. Washington were both authorized to negotiate on behalf of Mr. Coleman during the settlement conference. During the hearing, Mr. Coleman testified that there was no fraud perpetrated by any of the parties to the lawsuit, and he also testified that none of the defense counsel attempted to deceive him in any way. He also stated that he was not coerced by the judge or by any of the defense counsel into agreeing to accept the defendants' offer. Instead, he testified that he felt rushed into accepting the offer. But he also testified that he did not tell the judge presiding over the settlement conference, Mr. Burgess, or Mr. Washington that he felt rushed. He testified that, after he and his parents left Mr. Burgess's office following the settlement conference and got back home, he decided that he did not want to go forward with the settlement.

Mr. Burgess testified that both he and Mr. Washington advised Mr. Coleman that he did not have to accept the defendants' settlement offer. Furthermore, Mr. Burgess made an effort to provide Mr. Coleman and his family with a comfortable and secure location for the settlement conference, complete with refreshments and bathroom facilities. Mr. Burgess's brief indicates that he was not aware that the

12

plaintiff or any member of his family participating in the settlement conference were dissatisfied with the settlement process until a few days after the conference when he was informed that the plaintiff did not wish to move forward and would not be signing the settlement documents because he felt stressed, pressured, and rushed during the mediation.

Mr. Coleman testified that his mother contacted Mr. Burgess's office as soon as they got back home that Mr. Coleman did not wish to complete the settlement process. Mr. Burgess testified, to the contrary, however, that it was not until two or three days later that his office received a phone call to that effect. On March 25, 2021, nine days after the mediation, Mr. Burgess informed the defendants' counsel that Mr. Coleman would not be signing the release documents.

Mr. Coleman's hearing testimony was not entirely consistent with the information provided to Mr. Burgess after the settlement conference and reflected in Mr. Burgess's briefing. Mr. Coleman stated several times during the hearing that he felt the settlement was rushed. But he did not testify that he felt stressed, pressured, or rushed during the settlement conference itself. Instead, his testimony was to the effect that he felt that the settlement conference occurred too early in the litigation process. This, however, was an issue that he could have – and should have – taken up with his counsel when the settlement conference was being scheduled. In fact, the settlement conference was originally scheduled for January 2021 (Rec. Doc. 4)

then postponed, at the request of the litigants until March 2021 (Rec. Doc. 5). Furthermore, Mr. Coleman could have raised this issue during the settlement conference, but he did not do so.

Taking into account the totality of the circumstances, this Court concludes that Mr. Coleman knew, during the settlement conference due to information provided by his legal counsel, that he was not obligated to accept the defendants' settlement offer, but decided to do so knowingly and voluntarily. This Court finds that Mr. Coleman knew, before the settlement conference concluded, that the material terms of the agreement were for the defendants to jointly pay Mr. Coleman the sum of $200,000 in exchange for his release of all claims asserted in the lawsuit (including but not limited to any medical review panel claims that might or could have been asserted against OGH Medical Services, Inc. or nurse Dorman) without impacting the prosecution of the criminal charges that arose out of the underlying incident. This Court finds that an oral agreement to settle the claims asserted in Mr. Coleman's complaint was formed on Mach 15, 2021 as to all material terms of the settlement; and this Court further finds that Mr. Coleman failed to prove that he has any valid defenses to the enforcement of the agreement. Therefore, the settlement agreement should be enforced.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the defendants' motion to enforce the settlement (Rec. Doc. 8) should be GRANTED, the defendants' alternative motion to reopen the case and set it for trial (Rec. Doc. 8) should be DENIED, and the plaintiff's motion to reopen the case and reinstate all claims (Rec. Doc. 18) should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[30]

Signed at Lafayette, Louisiana on July 22, 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[30] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).